[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pietrangelo v. Avon Lake,* Slip Opinion No. 2016-Ohio-5725.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5725

THE STATE EX REL. PIETRANGELO *v.* THE CITY OF AVON LAKE ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pietrangelo v. Avon Lake,* Slip Opinion No. 2016-Ohio-5725.]**

*Mandamus—R.C. 149.43—Public-records mandamus case moot because all requested records either have been provided or no longer exist—Statutory damages denied for failure to prove hand-delivery of written request for records.*

(No. 2015-0197—Submitted May 3, 2016—Decided September 13, 2016.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} Relator, James Pietrangelo II, submitted a public-records request to the records clerk for the police department of the city of Avon Lake. Pietrangelo claims that he personally hand-delivered to the clerk a written public-records request on December 30, 2014, and that the department was completely

unresponsive to the request until Pietrangelo filed this lawsuit in February 2015 against respondents, the city of Avon Lake and Duane Streator, the Avon Lake police chief. The department asserts that although Pietrangelo verbally requested an incident report and other records on December 30, regarding events that occurred on December 29, 2014, he did not submit a written request. The department also asserts that the clerk told Pietrangelo when the requested incident report would be available, but that Pietrangelo neglected to come back and pick it up.

{¶ 2} Because the only requested records that have so far not been produced to Pietrangelo by respondents no longer exist, the case is moot. We therefore deny the request for a writ of mandamus. And because Pietrangelo fails to prove that he made a hand-delivered written request, we deny statutory damages.

*Facts*

{¶ 3} On December 29, 2014, two Avon Lake police officers responded to a complaint made by Pietrangelo about juveniles at a skate park. The officers spoke to Pietrangelo and the juveniles and took handwritten notes, which they assert were for their personal convenience to help them recall what was said when they later prepared the incident report. Both officers attest that soon after the report was prepared, they destroyed the notes.

{¶ 4} Respondents assert that on December 30, 2014, Pietrangelo telephoned the police department and asked whether a report had been generated for the skate-park incident that occurred the day before. The records clerk, Michael Cipro, asserts that during the phone conversation, he advised Pietrangelo that no report had yet been generated. Cipro asserts that Pietrangelo came to the police station later that day, again inquiring about the incident report. Cipro informed Pietrangelo that the report was being prepared but would not be ready for two or three days and that he should check back at that time to obtain a copy. Cipro asserts that he did not use the term "draft" or "rough draft" when referring to the report and that Pietrangelo did not ask for a draft of the report.

2

**{¶ 5}** Respondents further assert that Pietrangelo did not make arrangements to have the report faxed, mailed, or otherwise delivered to him and that he did not submit a written request for records relating to the December 29, 2014 incident at the skate park. Respondents assert that Pietrangelo never followed up to obtain a copy of the report.

**{¶ 6}** According to respondents, Pietrangelo never delivered the December 30, 2014 letter attached to his mandamus complaint to the police department. Lieutenant Scott Fishburn asked each of the employees of the department whether he or she had received a December 30 written request from Pietrangelo, and each assured him that he or she had not. Lt. Fishburn also searched the department files in which written requests for records are kept and found no such request.

**{¶ 7}** Pietrangelo, however, asserts that he hand-delivered a written records request to the police department on December 30, 2014. Pietrangelo claims that when he hand-delivered the written request, he verbally asked Cipro if the police report was available for immediate release that day. Pietrangelo asserts that he never withdrew or modified the written request. According to Pietrangelo, in response to his verbal request, Cipro told him that only a draft version was available at that time, but Cipro did not offer to release it.

**{¶ 8}** Pietrangelo further asserts that he suspected that the department would ignore his December 30, 2014 request, so he put the request in writing, rather than making only a verbal request. Pietrangelo asserts that the officers who responded to the skate park on December 29 had repeatedly "displayed opposition" to him. He asserts that he has filed a lawsuit against Avon Lake alleging that the skate park is a nuisance and that he believed that the department would withhold the records in order to frustrate the suit.

**{¶ 9}** Pietrangelo filed this original action for a writ of mandamus on February 5, 2015, asking for a writ ordering respondents to comply with the Public Records Act, R.C. 149.43, and to produce the requested records. Pietrangelo also

seeks redress for a "pattern of refusal" by Avon Lake respondents regarding to his records requests. He prays for statutory damages, costs, and attorney fees.

**{¶ 10}** We referred the case to mediation on February 17, 2015, but it was unsuccessful. On March 17, 2015, which Pietrangelo asserts was the day after the mediation failed, the department left Pietrangelo a telephone message telling him that the records he requested were ready for pickup. On March 18, Pietrangelo went to the police station, where a dispatcher gave him a compact disc containing, according to Pietrangelo, many, but not all, of the records sought in the request.

**{¶ 11}** The records had been assembled by Lt. Fishburn. The records on the disc are described by Lt. Fishburn as consisting of seven audio clips, one video clip, two calls for service reports, a public-records-redactions-and-exemptions form, and an incident report with Social Security numbers redacted, all relating to the December 29 skate-park incident.

**{¶ 12}** On March 24, 2015, the court returned the case to the regular docket, and respondents filed an answer and a motion for judgment on the pleadings, to which Pietrangelo responded.

*Analysis*

**Mandamus**

**{¶ 13}** "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1).

**{¶ 14}** Although the Public Records Act is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16. Clear and convincing evidence is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not

to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. In addition, unlike in other mandamus cases, "[r]elators in public-records cases need not establish the lack of an adequate remedy in the ordinary course of law." *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 25.

**Mootness**

{¶ 15} Respondents correctly assert that "[i]n general, providing the requested records to the relator in a public-records mandamus case renders the mandamus claim moot." *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 14, citing *State ex rel. Toledo Blade Co. v. Ohio Bur. of Workers' Comp.*, 106 Ohio St.3d 113, 2005-Ohio-6549, 832 N.E.2d 711, ¶ 16.

{¶ 16} Pietrangelo asserts that all the requested documents have not been produced. Specifically, he asserts that copies of at least two records were not released: the notes taken by officers at the skate park on December 29 and the draft police report mentioned by Cipro on December 30, 2014. He points out that respondents admitted in their answer that such records existed on December 30, and that they were public records. He also asserts that none of the respondents' affiants attested that the records produced are the only responsive records available.

{¶ 17} Respondents claim in their brief that the notes taken by the responding officers were for the personal convenience of the police officers in preparing the incident report. Respondents assert that the personal notes are not public records.

{¶ 18} We have held that personal notes taken for the convenience of public officials are not public records. *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d

196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 13-22; *State ex rel. Steffen v. Kraft*, 67 Ohio St.3d 439, 440, 619 N.E.2d 688 (1993). As we held in *Steffen* and *Cranford*, if the notes were taken for the officers' own convenience to recall events when later preparing a report and not as part of the department's official records, they are not public.

{¶ 19} However, Pietrangelo points out that in their answer, respondents admitted that police-department employees had told him before the December 29 incident that the department "has a system or custom of recordkeeping whereby responding-officer notes concerning violations of the skate park rules are kept at [the department] for future reference." Pietrangelo claims that this admission shows that the notes are part of the official skate-park file and should have been produced in response to his request. Pietrangelo believes that the notes may contain information not in the official report, including allegedly fictitious addresses given by some of the juveniles when interviewed by the police. Indeed, the answer also admits that the notes may have contained information not in the report.

{¶ 20} The officers state in their affidavits that the officer who wrote the report used his notes to prepare it, and then both officers' notes were destroyed. If the notes have been destroyed, correctly or not, they cannot be produced at this point. Respondents cannot be ordered to produce records that no longer exist.

{¶ 21} As to the "draft" incident report, respondents' answer admits that there was a "draft" report in existence on December 30, 2014, but the department now asserts that there was only one report, never a "draft." Respondents assert that the report was being prepared but was not complete at the time of Pietrangelo's original request. Nevertheless, once the report was completed, it was available to Pietrangelo.

{¶ 22} All existing documents related to the December 29, 2014 skate-park incident have apparently been produced, and the case is moot. We therefore deny the request for a writ.

**Statutory damages**

{¶ 23} Pietrangelo also argues that the court should award damages. Because the department did not produce the requested records to Pietrangelo until March 2015, almost three months after the request, it arguably did not satisfy the requirement of R.C. 149.43(B)(1) that requested records be made available "within a reasonable time." Pietrangelo may be entitled to statutory damages because of the delay, but only if he delivered the request by hand or by certified mail. R.C. 149.43(C)(1). Pietrangelo asserts that he delivered the December 30, 2014 request by hand.

{¶ 24} Respondents claim that the letter was never delivered by hand or otherwise. For proof, they submit the affidavits of Cipro and Lt. Fishburn, who attest that the letter was not received, that it is not in the department's files, and that the department knew of the letter only because it was attached to the complaint in this case. Respondents also assert that Cipro's statements to Pietrangelo during Pietrangelo's visit to the police station on December 30, 2014, and on the voicemail he left Pietrangelo on March 17, 2015, indicate the department's willingness to produce the requested records. The department maintains a log of requests for records, and that log indicates that between September 23, 2013, and August 17, 2014, Pietrangelo requested records on three occasions. On each occasion, he appeared in person to request the records and the request was promptly filled.

{¶ 25} Pietrangelo asserts that his sworn affidavit is not the only evidence he has to prove that he hand-delivered a request. He submitted a video that he made of himself purportedly delivering the request letter on December 30, 2014. Respondents assert that the video fails to show that Pietrangelo hand-delivered the request letter.

{¶ 26} Respondents' assertion is correct. The video fails to establish by clear and convincing evidence that Pietrangelo delivered a written public-records request to the department. The video shows Pietrangelo with the two-page

December 30 public-records request. It shows Pietrangelo exiting his car. However, during most of the video, the paper is held over the camera lens so that it is impossible to tell where he is walking. The video shows a brief glimpse of a sign with an arrow pointing to the police department, but the video continues only with views of the paper and Pietrangelo's feet walking on the pavement. It shows him entering a door, but the video shows only the pavement and does not show a sign or other indication of what building or office he may be entering. Once he is inside, the video briefly shows Pietrangelo's hand holding the document, but it does not show him handing the document to anyone, or another hand taking the document from him. Pietrangelo can be heard speaking to another person, indicating that he was seeking more than just the report and logs and was also requesting all documents relating to the incident. Neither he nor the other person who can be heard on the recording refer to a written request. After the brief view of his hand holding the document, the video shows only Pietrangelo's feet; it does not show the faces of Pietrangelo or the person to whom he is speaking, and it does not show him handing the letter to anyone.

{¶ 27} Given that the video is inconclusive and that we have contradictory affidavits from Pietrangelo and police-department employees, Pietrangelo has failed to show by clear and convincing evidence that he delivered the December 30, 2014 public-records request by hand. He is therefore ineligible for statutory damages.

{¶ 28} Pietrangelo also asserts that even if respondents have turned over all the requested documents in this case, the case is not moot, because they have chronically violated their legal obligations toward him with regard to public records. In support of this argument, he cites a case in which a court of appeals granted in part his petition for a writ of mandamus against Avon Lake, holding that Avon Lake should not have redacted the professional-fee summary from attorney billing statements produced in response to Pietrangelo's records request. He

8

appealed from the portion of the judgment that denied the writ as to other aspects of his request. We recently affirmed the court of appeals' denial. *State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d 292, 2016-Ohio-2974, 55 N.E.3d 1091. Pietrangelo has not shown that respondents are chronically violating their public-records obligations.

{¶ 29} We also deny Pietrangelo's consolidated motions for sanctions and/or for an order to show cause, to hold a hearing, and for leave to conduct discovery, all of which are related to his assertion that respondents engaged in misconduct by suborning perjury and destroying public records.

*Conclusion*

{¶ 30} We deny Pietrangelo's request for a writ because the only documents requested but not produced no longer exist. And because Pietrangelo cannot show by clear and convincing evidence that he hand-delivered the request, he is ineligible for statutory damages.

Writ denied.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by FRENCH, J.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 31} I agree with the majority that the request for a writ of mandamus is moot. However, I disagree with its determination that relator, James Pietrangelo II, failed to demonstrate by clear and convincing evidence that he hand-delivered his public-records request to the Avon Lake Police Department. The recording clearly and convincingly demonstrates that Pietrangelo hand-delivered his public-records request to the police department. Therefore, I would hold that he is entitled to statutory damages. Accordingly, I concur in part and dissent in part.

**{¶ 32}** R.C. 149.43(C)(1) mandates the award of statutory damages for unreasonable delay in responding to a public-records request that was delivered by hand or by certified mail. The burden is on the requester to prove the delivery by clear and convincing evidence. *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175. Clear and convincing evidence is " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 33}** Pietrangelo is not a novice requester of public records. The Avon Lake Police Department records clerk, Michael Cipro, stated in his affidavit that Pietrangelo hand-delivered three separate requests to the police department from September 23, 2013, to August 17, 2014. Moreover, a review of this court's docket reveals that this is the second legal action Pietrangelo has filed to obtain a public record and statutory damages. *See State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d 292, 2016-Ohio-2974, 55 N.E.3d 1091.

**{¶ 34}** In this matter, the majority correctly points out that there are contradictory affidavits from Pietrangelo and the police-department employees on whether the request was hand-delivered on December 30, 2014. Majority opinion at ¶ 27. Accordingly, the recording that Pietrangelo submitted is critical evidence in resolving this dispute.

**{¶ 35}** The majority accurately depicts those portions of the recording that it has chosen to describe. However, the majority falls far short of giving a full and fair depiction of the contents of the recording.

{¶ 36} At the beginning of the recording, a cell phone display is shown, indicating the time and date as "11:54 AM, Tue, Dec 30," and Pietrangelo's two-page typed public-records request is shown. The document is titled "Public Records Request," is dated December 30, 2014, and states "via personal hand delivery to Avon Lake Police Department Safety Center." During this part of the recording, Pietrangelo says, "OK, its 11:54 a.m., December 30, 2014, and I've got this public-records request, which I'm going to be—it's a two pager—hand-delivering to the police department here in a second."

{¶ 37} Pietrangelo was carrying the camera, so the video is shot from his perspective. The recording shows Pietrangelo exiting a vehicle and walking past a sign that states "Police Department Municipal Court Entrance," with an arrow pointing toward an entrance to an office building behind the sign. It is evident from the recorded movement that Pietrangelo is walking in the direction of the police department and toward this entrance. Pietrangelo then enters an office building, holding the document, and says, "Hi, Inspector Cipro. That's a request. I'm seeking more than just the reporter log, that's like an actual request, so I'm requesting everything the department has relative to that incident." Thereafter, a voice different from Pietrangelo's responds, "OK."

{¶ 38} The majority finds Pietrangelo's recording to be inconclusive and states that Pietrangelo can be heard speaking to another person, indicating the he was seeking all documents relating to the incident, but that neither he nor the other person are heard referring to a written request. Majority opinion at ¶ 26. I disagree; when all aspects of the recording are considered, both the video and audio, Pietrangelo does refer to the written request and has proved by clear and convincing evidence that he hand-delivered it.

{¶ 39} It is undisputed that Pietrangelo went to the police station on December 30, 2014. The recording establishes that Pietrangelo walked into the building, holding the document, and greeted "Inspector Cipro" and was not

corrected with respect to the identity of the person he greeted. Therefore, it is reasonable to infer from the video that Pietrangelo was greeting Cipro after walking into the police station with the document on December 30, 2014. After greeting Cipro, Pietrangelo states, "That's a request." In this context, "that" is a demonstrative pronoun; it refers to the document and conveys that the document is no longer in Pietrangelo's hand. *See Chicago Manual of Style,* Section 5.51, 217 (16th Ed.2010). Cipro's response of "OK" indicates an acknowledgement. Accordingly, it is reasonable to infer that Pietrangelo handed the document to Cipro and Cipro received it.

{¶ 40} A fair reading of the majority's interpretation of what happened is that Pietrangelo, a frequent public-records requester, failed to deliver his written request despite recording himself holding the written request and saying it was his intention to hand-deliver it to the police station, walking into a building located behind a sign for the police station, and informing another person within the building that he had a public-records request. This conclusion is unreasonable.

{¶ 41} Moreover, with its holding, the majority has imposed upon Pietrangelo a burden of proof that far exceeds the evidentiary standard needed for proving hand-delivery of a public-records request. The majority seems to require evidentiary proof above even the criminal standard of beyond a reasonable doubt and require incontrovertible evidence. Pietrangelo should take note of the burden placed upon him by the majority, and if he attempts a similar method to memorialize his hand-delivery of a public-records request in the future, he should be sure to capture himself handing the document to the employee of the entity from which he is seeking the public records.

{¶ 42} Nevertheless, as stated above, the standard of proof to be applied is clear and convincing evidence, *Miller*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, which is that measure of proof that " 'will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established,' "

*Husted*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18, quoting *Cross*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus. Because Pietrangelo has demonstrated by clear and convincing evidence that he hand-delivered his public-records request and that Cipro received his public-records request, I would hold that he is entitled to statutory damages.

{¶ 43} Accordingly, I concur in part and dissent in part.

FRENCH, J., concurs in the foregoing opinion.

_____

James E. Pietrangelo II, pro se.

Abraham Lieberman, Avon Lake Law Director, and David M. Graves, Assistant Law Director, for respondents.

_____